**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | Civil Action No. _____ |
| ) | |
| Plaintiff, ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| MATTHEW GROOM, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges the following against defendant Matthew Groom ("Groom" or "Defendant"):

**SUMMARY**

1.      This case involves insider trading by Groom in the shares of Spero Therapeutics Inc. ("Spero" or the "Company"), a Cambridge, Massachusetts-based biopharmaceutical company, ahead of a Company announcement that Spero was suspending commercialization efforts for its lead product candidate, Tebipenem Hbr ("Tebipenem") (the "Announcement").

2.      Beginning in January 2022, Groom contracted to work as an information technology ("IT") consultant to Spero.  In that capacity, he was subject to a confidentiality agreement with the Company.  On March 30, 2022, Groom's main point of contact at Spero, the Head of Enterprise Technology (the "Spero IT Head"), alerted Groom to material nonpublic information about Spero's contingency planning for a possible workforce reduction.  Later the same day, based on this material nonpublic information, Groom placed an order to sell all his Spero shares.

3.      On May 3, 2022, Spero announced for the first time that the U.S. Food and Drug Administration ("FDA") had suggested that the data Spero submitted in support of its Tebipenem drug application was insufficient for approval, and, as a result, Spero would be immediately reducing its workforce by approximately 75%.  Spero's stock price fell approximately 64% from the previous closing price on the bad news.  By illegally dumping his Spero shares in advance of the Announcement, Groom avoided losses of $12,936.86.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

4.      The Commission brings this action pursuant to Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. 77t(b)] and Sections 21(d), 21(e), and 21A of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d), (e), and 78u-1].

5.      The Commission seeks a permanent injunction against Groom, enjoining him from engaging in the transactions, acts, practices, and courses of business of the type alleged in this Complaint; disgorgement of ill-gotten gains, including losses avoided, from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest; a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21A of the Exchange Act [15 U.S.C. §78u-1], and the Insider Trading and Securities Fraud Enforcement Act of 1988; an order barring him from serving as an officer or director of a public company for five years, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)]; and such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)], and Sections 21(d), 21(e), 21A, and 27 of

2

the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

7.      Venue is proper in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77a] and Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C §78u(d), 78u-1, and 78aa].  Spero is headquartered in Massachusetts and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the District of Massachusetts.

8.      Groom, directly or indirectly, has made use of the means or instrumentalities of transportation or communication in interstate commerce, or the mails, including the internet and the telephone.

## DEFENDANT

9.      **Matthew Groom**, age 48, resides in Wake Forest, North Carolina.  Groom is self-employed as Managing Director of TechNet UC ("TechNet"), a private information technology consulting company that he co-founded.

## RELEVANT ENTITY

10.      **Spero Therapeutics Inc.** is a Delaware corporation based in Cambridge, Massachusetts and focused on the development of treatments for rare diseases and diseases caused by multi-drug resistant bacterial infections.  Spero's common stock is registered with the Commission and trades on the Nasdaq Global Select Market under the ticker symbol SPRO.

## STATEMENT OF FACTS

**A.      After FDA Notified Spero That the Tebipenem Trial Data Had Not Met the Required Efficacy Outcome, Spero Began Contingency Planning.**

11.      On October 28, 2021, Spero announced that it had filed a New Drug Application ("NDA") with the FDA for Tebipenem, a drug intended to treat complicated urinary tract infections.  Pursuant to published FDA guidance, FDA was slated to decide on the Tebipenem

3

NDA by June 27, 2022.  If the FDA rejected the Tebipenem NDA or substantially delayed approval beyond the June 27 date, Spero risked not having sufficient funds to continue its commercialization efforts.

12.    At the mid-point of the FDA's review cycle, in early February 2022, FDA notified Spero that the Phase 3 study on which its NDA was based had failed to demonstrate the required efficacy endpoint in the relevant study population—putting in peril Tebipenem's chances of approval on schedule or at all.

13.    By at least March 2022, Spero began contingency planning for such an outcome, including formulating plans to suspend its commercialization efforts for Tebipenem and significantly reduce Spero's workforce.  As part of this planning, Spero's Chief Legal Officer directed the Spero IT Head to review the Company's service contracts with third-party vendors for the purpose of identifying cost reductions associated with employing fewer employees.

14.    In an interview as part of the Commission's investigation into this matter, the Spero IT Head admitted that she understood her contract review was being done in anticipation of Tebipenem potentially being denied approval and that she was not permitted to disclose publicly the corporate contingency planning or trade in Spero shares.

**B.**    **Groom Owed a Duty of Confidentiality to Spero.**

15.    Spero's service contract with Groom's company, TechNet, was one such contract that was up for review by the Spero IT Head.  Under the agreement executed by TechNet and Spero (the "Agreement"), TechNet would provide IT services to Spero for a term of five years, including hardware and software support and license procurement for certain technology products, on which TechNet charged Spero a per-user fee.

16.     The Agreement also obligated TechNet and Groom to use Spero's "Confidential Information only to the extent required to perform the" services outlined in a separate statement of work, "and for no other purpose" and not "in any manner that would constitute a violation of" appliable laws.  Further, the Agreement provided examples of Confidential Information subject to the confidentiality provisions.  Such examples included information about Spero's "clinical programs, data and results," its "personnel," and other "confidential . . . matters related to" TechNet's services.  Groom signed the Agreement on behalf of TechNet.

17.     The Spero IT Head and Groom were longtime acquaintances.  They met in or around 2008, when they each worked at separate pharmaceutical companies, and thereafter maintained a social and professional relationship.

**C.     Groom Traded on the Basis of Material Nonpublic Information Concerning Spero's Planned Downsizing.**

18.     On March 30, 2022, at approximately 9:30 a.m., the Spero IT Head and Groom met virtually in connection with Spero's potential downsizing.  Then, at 10:21 a.m.— 21 minutes after their meeting was scheduled to end—Groom sold all his Spero holdings (2,025.653 shares) that he had purchased in 2020.

19.     A few days later, on April 4, 2022, Groom sent the Spero IT Head a "statement of work" in follow-up to their March 30 call.  The statement of work identified the scope of services TechNet would provide to Spero and itemized the various technology licenses and equipment TechNet would provide going forward.  While Groom included precise numbers for equipment and users before the March 30 call, the statement of work he sent on April 4, *after* the call with the Spero IT Head, listed only "TBD" in many of those categories.

**D.    Spero Announced Its Downsizing and Its Stock Price Plummeted.**

20.    On May 3, 2022, approximately a month after Groom liquidated his Spero stock, Spero announced it was immediately ceasing efforts to commercialize Tebipenem in the United States due to the FDA's indication that the Tebipenem Phase 3 study had failed to achieve its primary efficacy endpoint.  The Company also announced that it would be laying off approximately 75% of its workforce as part of a restructuring necessitated by the Tebipenem regulatory developments.

21.    The Announcement resulted in a 64% drop in Spero's stock price, from a closing price of $5.09 per share on May 2, 2022, to a closing price of $1.85 per share on May 3, 2022.

22.    Groom avoided losses of $12,936.86 by selling his Spero holdings in advance of the Announcement.

**E.    Groom Breached His Duty of Confidentiality to Spero by Selling his Shares.**

23.    Groom traded on the basis of information about Spero's proposed reduction in technology licenses going forward.  In doing so, Groom knew, or recklessly disregarded, that information concerning Spero's corporate downsizing was not publicly known or disseminated prior to the Announcement.

24.    Information concerning Spero's corporate downsizing was also material.  Indeed, when Spero released such information to the public on May 2, 2022, Spero's stock price declined 64%.  Groom knew, or recklessly disregarded, that this information was material because he promptly liquidated his Spero holdings minutes after his call with the Spero IT Head.

25.    By selling Spero stock on the basis of material nonpublic information, Groom willfully or recklessly violated a contractual duty of trust and confidence he owed Spero.

## FIRST CLAIM FOR RELIEF
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

26.     The Commission realleges and incorporates by references the allegations in paragraphs 1 through 25 above.

27.     As set forth above, Defendant traded Spero securities on the basis of material nonpublic information about Spero in breach of Defendant's duty of confidentiality to Spero. Defendant knew, consciously avoided knowing, or was reckless in not knowing that this information was material and nonpublic.

28.     By engaging in the conduct described above, Defendant, directly or indirectly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

29.     By engaging in the conduct described above, Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF
### Violation of Section 17(a) of the Securities Act

1.     The Commission realleges and incorporates by references the allegations in paragraphs 1 through 25 above.

7

2.      By engaging in the conduct described above, Defendant, singly or in concert with others, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or would have operated as a fraud or deceit upon persons.

3.      By engaging in the conduct described above, Defendant violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A.      Permanently restrain Defendant, his agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal services or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. §§78i(a), 78j(b)], and Rule 10b-5 thereunder [17 C.F.R §240.10b- 5] by (i) buying or selling a security of any issuer, on the basis of material nonpublic information, in breach of a fiduciary duty or other duty of trust or confidence that is owed directly, indirectly, or derivatively, to the issuer of that security or the shareholders of that issuer, or to any other person who is the source of the information; or (ii) by communicating material nonpublic information about a security or issuer, in breach of a fiduciary duty or other duty of trust or confidence, to another person or persons for purposes of buying or selling any security;

B.       Order Defendant to disgorge, with prejudgment interest, all ill-gotten gains, including losses avoided, that were obtained by reason of the unlawful conduct alleged in this Complaint;

C.       Order Defendant to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21A of the Exchange Act [15 U.S.C. §78u-1];

D.       Enter an order barring Defendant from serving as an officer or director of certain public companies for five years, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)];

E.       Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

F.       Grant such other further relief as the Court may deem just and proper.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.

Dated:  October 15, 2024                    Respectfully submitted,

/s/  *Susan R. Cooke*_____
Susan Cooke (DC Bar No. 978173)
Lawrence Pisto (Mass Bar No. 555317)
James Fay (Mas Bar No. 553435)
Colin Missett (Mass Bar No. 706248)
SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA  02110
Phone: (617) 573-4538
Email:  CookeS@sec.gov

9

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2024, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. A copy will also be sent via first class mail and/or email to those parties who have not yet registered for notice via the Court's CM/ECF system.

/s/    *Susan R. Cooke*